All rise. Judges of the United States Court of Appeals. Security, security. The United States Court of Appeals for the Sixth Circuit is now in session. All persons having business will go in the front of the court, and all the others, keep attention and you shall be heard. That said, the United States and his Honorable Court, please be seated. Good morning. You represent the appellant. When you come up, let us know how much time you would like for rebuttal, even if you've already informed the clerk of that. May call the first case. Case number 17-1168, Stewart Spencer v. DTE Electric Company, L. Good morning. May it please the court, Mark Bender up here on behalf of the plaintiff appellant. I'd like to reserve for three minutes. How long? Three minutes, please. Thank you. As the court is aware, this case arises from a summary judgment ruling arising out of the state of Michigan involving the injury to Mr. Spencer on a construction site. The case really involves two separate theories of liability predicated on two separate duties and their interplay. In this case, it was presented by plaintiff primarily under construction liability principles in which someone overseeing a construction project is responsible either for its own act of negligence or for its negligence in supervising others who are performing under its power. It also involves premises liability principles arising from the duty imposed on one who owns property. In this case, it was pleaded and presented primarily as a construction liability case, but the district court construed it as a premises liability case and dismissed it on the basis of the open and obvious doctrine, which negates a duty on a property owner if the injurious condition is open and obvious unless there are special aspects. First of all, we argue that the court was in error in failing to recognize or analyze it as a construction liability case in the way it was pleaded. According to the court's reasoning, because a condition of the property was involved, it was exclusively a premises liability case. If you take that to its logical conclusion, consider a case like this. A and B push down the plaintiff, and when he falls, he hits his head on a rock. One of the two, A owns the property, B doesn't. Under the court's analysis, he could not be held liable for pushing the plaintiff down because the rock was a condition of the property that caused injury. To follow through with that reasoning, because a condition of the property was involved, the owner couldn't be held liable for its negligence in pushing him down. However, B... I don't think that takes it out of the whole rim of being a premises liability case and instead makes it an intentional tort. Well, the judge's analysis... Well, I don't think so necessarily. Okay. But in any event, if you look at the Michigan case law, particularly the Goferi case, they recognize these as two separate theories of liability arising from two different duties and two different statuses containing two different elements. And Goferi is clear in saying the open and obvious doctrine, which abnegates a duty on a premises owner, doesn't apply to a construction liability case. And there are several others that we have cited in which the court reaches essentially the same conclusion implicitly by conducting separate analysis. And so the argument is that the court should have considered the case as pleaded under the construction liability theory, and that rises or falls on its own regardless of whether the negligent party is the owner. And in fact, there are several other cases which say that two parties on a construction site, each owes a duty of reasonable care for the protection of employees of the other. Was there a workers' compensation claim here? There would have been, I would think. I mean, it's not part of the record, but I think there would have been. And if I'm not mistaken, the workers' compensation carrier would have a lien on any recovery for the amount of the workers' comp benefits that had been paid. Yeah, but if comp was the exclusive remedy, that would potentially buy this suit unless there was willful misconduct or something of that nature. So, I mean, if a comp claim would have been viable, you wouldn't even be able to bring this suit. The workers' comp claim would have been against plaintiff's employer, Monarch, not against Detroit Edison or DTE. So the fact that he has a comp claim against his own employer doesn't exclude a negligence case against a different entity, DTE. Okay. So that may be a better answer for what you were looking for. The other aspect of the case is that even under the premises liability analysis, as the judge specifically recognized, that doctrine says there's no duty if it's open and obvious unless there are special aspects. That's part and parcel of the same analysis. And in this case, the judge even went on to say that the plaintiff had to use this access. I could give you the exact quote. Plaintiff had to work along the top edges of the stater's metal grid work in order to do what he did. That's page 8 of the court's opinion. I thought that special aspects was intended to address the situation where perhaps the general danger might be open and obvious, but there was something about the situation that the person to whom it was open and obvious, I mean, this is not all in the case law, but I'm sort of extrapolating a little bit. Like, for example, you know there's water there, but you don't know how deep it is or you don't know where the jagged rocks are or something like that. So there might be an open and obvious hazard, but the extent of the hazard or the nature of the hazard is unknown, and that brings it into the special aspects doctrine. It's actually a little bit different. If you look at the Lugo opinion itself, it has two examples. One is if the situation is, quote, essentially unavoidable, close quote. And they use the water analogy. If you can't avoid the water, even if it's open and obvious, that's based on the idea that you have an ability to avoid it. But if you're put in a situation where that condition is essentially unavoidable, then that is one aspect, one special aspect. The other example in the Lugo opinion is if it is still too dangerous. And, in fact, in that case, it's, I think the example is a hole that's so deep that if you fall, you're going to get seriously hurt. And so there are really two different special aspects used in the Lugo analysis. And we argue that we fit into both. First, it's essentially unavoidable, just as Judge Rosen found that he had to encounter that dangerous condition. And the second one is because you've got this fall hazard and the grids with it. We have to encounter the condition. I mean, he could have observed before he entered that area the extent of the danger in a better way than he apparently did. And then, arguably also, DTE was negligent in removing the plywood floor, which sort of makes a difference as well. Well, the negligence of DTE is exactly what the case is all about. We're suing on the basis of that. It was essentially unavoidable in the sense that his job required that. One of his coworkers, according to the testimony, told him or asked him to get the come-along or the chain fall necessary to move the equipment. But he had a harness on, and is there an issue that that harness wasn't properly adjusted because it wasn't short enough or somehow didn't save him from the injury? I mean, did he, I mean, well, maybe that's the issue of contributory negligence. Exactly. That's exactly the point. There was negligence by both. Did DTE remove the planks or did Brand remove them so that DTE, so that the equipment could be worked on? My understanding is DTE ordered Brand to do it. But Brand was the actual actor there. Brand was the one. And there was no way to work on the equipment unless you moved the planking, right? That's disagreed. The testimony is split. The defense people say that you could do it without the platform or doing it without the platform serves some other beneficial purpose. Our argument was that to do it safely, you need the platform. That's exactly what it's there for. It's unclear to me, wasn't your client supposed to have notified his supervisors before he was in that area? No. My understanding is I thought there was a sign posted. Can I read that? No. Here I think is the answer. There were, you had to be permitted or get some sort of consent from DTE to get into this area. In fact, I think there had been something like 34 people in the past two days. And so, and he qualified and all that. There was some, pardon me? He obtained a permit? Yes, yes. I mean he was authorized to do it by DTE. There wasn't anything else he was supposed to do? Pardon me? There wasn't anything else he was supposed to do? Well, what he was supposed to do was to remove this so that they could do the next part of the maintenance. There was some yellow, I think what you may be referring to is, there was some yellow tape that he crossed through. And there was a disagreement as to the meaning of the yellow tape. The defendant argues it meant that he shouldn't have gone into it at all, despite being ordered to do so by his coworkers. His testimony was that was to keep out unauthorized people. But since he was permitted and authorized, he was expected or at least allowed to go past the yellow tape because he was required to do it to accomplish his job function. So our ultimate argument is, first, that the construction liability theory remains viable under GAFARI and that the open and obvious defense to a premises duty doesn't apply to the separate duty and separate liability. And secondly, that the court erred in applying the premises liability open and obvious doctrine by failing to consider the two special aspects which were identified in Lugo. Thank you. Thank you. Thank you. May it please the court, may I proceed? Yes, indeed. Your Honors, Tom Brannigan from the Bowman and Brooke Law Firm for DTE, the appellee. Your Honors, I was struck by plaintiff's, excuse me, appellate counsel's comment that the trial judge, Judge Rosen, did not consider all of the aspects of the plaintiff's complaint in granting our motion for summary judgment. I think that the record from below, including the judge's opinion and order, is crystal clear in that the judge considered every aspect of the plaintiff's complaint. Judge Rosen, the trial judge, pointed out in his opinion and order that the court is not, the lower court and this court, is not bound to accept the labels that a party attaches to a claim. So even though the plaintiff appellant tried to style his complaint as a, quote, common work area doctrine construction site complaint under the holding of Buhalas, 822 Northwest 2nd at 258. This is a direct cite and quote from the opinion below. The court is not bound by the labels that the parties attach to their claims, but instead must determine the gravamen of this action by reading the complaint as a whole and by looking beyond the mere procedural labels to determine the exact nature of the plaintiff's claims. That's exactly what Judge Rosen did. And in doing so, the judge determined rightfully in our view, based on the record facts, that this is not a case of retained control against the property owner, my client, the appellee DTE, or a common work area doctrine case. The only claim the plaintiff has on the facts that were presented below and that are available to this court above would allow a premises liability claim. But even the premises liability claim against DTE fails because the plaintiff has not brought forth facts to get over two points. First, he can't get over the fact that he's already admitted that the danger he claims that caused his injury was open and obvious. If you look at the appellant's reply brief at page 14, he said he accepts that the danger that allegedly caused his injury is open and obvious. And with respect to the defense to that now, which is what he's raising, or the exception to the open and obvious defense to a premises owner's potential liability to a business invitee, the so-called special aspects provision of Michigan law, there were no facts below, there are no facts here, that would support a special aspect of this open and obvious risk. First, as the court in Lugo and the court in Hawthorne, which we cite in our briefs, point out, this special aspects exception is a very narrow exception to the open and obvious doctrine under Michigan law. It requires a unique or special circumstance to exist on the land to derail the open and obvious defense. As we explained in our briefs, your honors, under Lugo and Hawthorne, in order to establish special aspects, there must be something special or particular about the open and obvious danger in order for the appellant property owner to be expected to anticipate the harm from the condition. And there are really two special aspects recognized under Michigan law that would negate the open and obvious defense. One, that the hazard was effectively unavoidable. Two, that the hazard was unreasonably dangerous. I'm citing your honors to Lugo v. Ameritech. Here the record facts establish that the hazard was not unavoidable. Here, the appellant, Mr. Spencer, testified in his deposition as follows. And I think this is just, this is cited in our brief. I think it's absolutely critical to this issue. Question, but did anyone tell you, Stewart, the appellant's first name, Stewart, go get a chain fall. Answer, yeah, one of the guys, yeah. Would you go up there and get a chain fall? Before I go on, let me point out that in the area of the DTE facility that the appellant was working, the so-called west primary air heater, there's a lower section and an upper section. At the time of the incident, the appellant was working with his fellow employees of Monarch, a contractor, in the lower section. There was no work scheduled whatsoever to occur in the upper section where the danger was that he claims caused his injury. I'll go on. Do you remember who it was that told you that? Answer, no, I don't. Question, and he specifically told you to go up into the upper section to get a chain fall as opposed to just go get a chain fall. Answer, yes, that's where our rigging was, upstairs. Question, but did he tell you to go upstairs to get a chain fall or just tell you... Answer, he just asked for a chain fall. So that record evidence is critical to this special aspects point because he was not told... A chain fall. Pardon me? I assume, the word chain fall I assume means a harness that would catch him in the event of falling. No, a chain fall is a mechanical device that can be used to lift, like a block and tackle device, to lift a heavy object. So if you're standing below and you want to lift the heavy object up, you use this device that is called a chain fall. This doesn't have anything to do with his safety. Pardon me? This doesn't have anything to do with his safety. Well, it doesn't have anything to do with his safety specifically, but in general it is the reason that he says he went up to the danger, to the upper level of the West Primary Air Heater, because he says, incorrectly, and in a way that is not supported by any record evidence, that the chain falls were only available to him upstairs. Well, that is record evidence if he's testifying to that. Well, that's true, but... There's not anything to corroborate his... In fact, there is contrary evidence, but on this point what is most critical is that he was not compelled to confront the danger. And what has not been really elaborated on up until now is the reality of the situation that he confronted once he decided to go climb the stairs, go up to the location where he thought chain falls were only located. Once he got upstairs to the area where he had to traverse on these narrow grids, before he could traverse on those grids, which is where he fell, he was confronted with a yellow caution rope and a hang tag that instructed him not to enter that area. He was asked in his deposition, did you understand what that meant? Oh, yes. Then I wasn't supposed to go in there. Did you understand why you weren't supposed to go in there? Yes, I understood that there was a fall hazard in that area beyond the yellow caution rope and hanging tag that says, you don't have permission to enter this area. He then made his second choice. He made the choice to disregard that yellow rope and enter that area, and that's where he fell. He could have made other choices. May I ask a question? Yes, ma'am. Did I misunderstand that he was wearing a harness? He was wearing a harness, yes. Okay, no. All right, well, I thought that was my understanding, and I thought Judge Clay asked a question about it. But the chain fall and the harness are two different things. Yes, the harness is something that is fitted on his body. Well, I mean, that's what I would have understood a harness to be, but I had no idea what a chain fall was. Yes, a chain fall is this mechanical device that actually has a chain on it and some hooks, and you can use it to lift heavy objects above. And it's a tool. The testimony is that there were chain falls near the lower area where he and his fellow Monarch employees were working. And, of course, as you pointed correctly out, Your Honor, the appellant says that he thought there was a chain fall above. The critical fact here is that no one compelled the appellant to go up to the harm. He made that choice, as his testimony points out. He also made the choice to disregard the yellow caution rope and hanging tag that required him to get permission to go beyond that point. So under Lugo and Hoffner, which are cited by both parties here, on the question of special aspects, the plaintiff wasn't confronted with an unavoidable, inescapable hazard. He was confronted with a choice, and he made the choice to go up to the upper section of the heater to confront a danger. So special aspects doesn't apply, which is why it was appropriate for the trial judge to dismiss this case on the premise of liability theory that is really the gravamen of the complaint. Now, appellant also— Let me ask you, why isn't this action precluded by his rights to recover under worker's compensation? I'm glad you came back to that, Your Honor, because I was going to answer that question. You asked, I made a note of this, you asked was there a worker's compensation claim. There was, and there was a worker's compensation recovery, and the worker's compensation carrier was an intervening plaintiff below to enforce its rights, lien rights against the recovery, or potential recovery in the personal injury case. Now, to answer your question directly, the worker's compensation law in the state of Michigan wouldn't preclude the appellant from bringing a claim, a premises liability claim, against a party that is not his employer. In this situation, my client DTE is the owner of the power plant where the accident happened. There was a construction project going on at the power plant, and the appellant was an employee of a contractor, a company called Monarch Welding and Engineering, that was under contract with my client to operate as the general contractor and run the entire construction operation. There were other subcontractors hired by Monarch. So the appellant was not an employee of my client, Appley DTE. He was an employee of the general contractor, which brings me to the other issues that the appellee has raised. The appellee claims that there are facts, genuine issues of fact, that would support a claim under Michigan law's provision called the retained control doctrine or the common work area doctrine. And it's our position that there are no facts that create even a question of fact on the issue of retained control. Retained control is explained in a case that both sides have cited to the court, Michigan Supreme Court case called Ormsby. Retained control applies if the owner of a project, in this case my client DTE, retained so much control over the actual work that was being done that it has essentially stepped into the shoes of the general contractor that it hired to do the work. We have cited... Yes. ...to put the plywood flooring down. So it sounds like that's at least one indicator of some, if that's right, it seems like it's an indicator of some control over the workplace being retained by DTE. Your Honor... Your description of the arrangement sounded like Monarch might have been the contracting party, but the district court says DTE was. DTE, as the owner of the power plant facility in Michigan, entered into a general contract relationship with Monarch, and there were also subcontracts between Monarch and Brand and additional contracts between other contractors and DTE. But the fact that the owner... Is the district court's statement that DTE hired Brand, to put down the flooring, is that accurate? I think it is, but I don't believe that it's dispositive of the issue here at all. I didn't say it was dispositive of the issue. I ask you if that wasn't one. Could not that be one indicator of control? I don't believe so. I don't think that just entering, that a property owner who just enters into a contract with a general contractor or a subcontractor is therefore retaining control of the project. I didn't say that, though. I said one piece of evidence. Yes. And I'm just pointing out perhaps with too much emphasis that the answer is no. It doesn't have some probative value, however slight. I don't believe so, Your Honor. And for the last 30 years, Michigan courts have been looking at this issue and responding to questions, your good question, like you just asked, in the negative. That does not by itself lead to retained control. I have never insisted it's dispositive or that it by itself establishes it. One piece of evidence is all I'm saying. Your Honor, Michigan courts, starting with Miller v. Great Lakes Steel, 315 NW 2nd 558, Samadai v. Chrysler have concluded that as a matter of law, when an owner of the property retains the right to reject contractors hired by a general contractor, change the work specifications for the job, complete the work on its own, impose safety requirements on the general contractor and other contractors, terminate employees of subcontractors who do not comply with the owner's own safety rules, none of those aspects, as a matter of law, lead to retained control. That's what we have here. As a matter of law, my client did not retain control. There are no facts of record that would even create a question of fact on the issue. The trial court got it right. Which Michigan cases end up saying control was retained? Well, the lead case is Funk v. General Motors from the early 1970s, which presents a very different set of facts here. So that's where we should look to find what retained control looks like. That's where the doctrine was created in Michigan. Are there any other cases? Certainly the Ghaffari case, which was cited to you by counsel for the appellant, is a case where retained control was discussed. But I would say that namely the case of Funk v. General Motors. Your Honor, for the reasons that we have cited to you all in our briefs and for the reasons that I have raised before you this morning, we believe that the trial court's decision should be affirmed, and that's what we're asking you to do now. Thank you. Thank you. I agree with counsel on a few points. One of them is that indeed the Funk and Ghaffari cases are two critical Supreme Court decisions regarding retained control. There's also another, Plummer v. Bechtel. It's cited in the brief. Those are the ones on retained control. In this case, however, the judge never reached that because he didn't even think it was a viable theory in the first place. And that's the problem. It seems to me minimally the court ought to remand to the district court to consider the pleaded and relied upon theory of construction liability. Counsel mentioned the role. Bear in mind, in this case, Edison was directing Brand and directing Monarch, and we don't know of all of the details except that there are 15 different contractors on this site. And you need someone to oversee it and run it. That's exactly what the retained control and common work area doctrines address. And in this case, that was Edison. Minimally there is, to address the point of Judge Gibbons, minimally there is a dispute of fact which, for summary judgment purposes, has to be viewed in light of the non-movement, the plaintiff. One interesting aspect is this. The construction liability has its elements, and one of them is that the danger is readily observable. Now contrast that with the open and obvious doctrine of premises liability law. If you say on the one hand that an open and obvious doctrine applies, you are necessarily obliterating construction liability, which makes readily observable an element of the cause of action itself. And that's why, in my view, the courts have consistently looked at these as two different theories of liability. With regard to the special aspects, as counsel quoted, the evidence is A, that he is supposed to get a chain come along, it's called sometimes, or a chain fall. And he testifies that the only one is up there. Now if you're told to get something which is only in one location, assuming you're doing your job, you have no alternatives. And that's what, I think the Hoffner case as well says, it's essentially unavoidable. And the point is when you get to that position, in the context of being told that you have to do it, is there a way you can avoid the hazard of the unguarded patchwork? And you can't. You just can't. That's why it's essentially unavoidable, and therefore actionable despite open and obvious, even under premises liability theories. Thank you very much. Thank you, and the case shall be submitted.